IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BETTER EDUCATION, INC., | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | Case No. 2:10-cv-412 |
| v. | ) | |
| | ) | |
| TURNING TECHNOLOGIES, LLC, | ) | |
| RENAISSANCE LEARNING, INC., | ) | |
| WIRELESS ESYSTEMS, INC., | ) | |
| and LEARNSTAR, INC. | ) | |
| | ) | |
|    Defendants. | ) | |

**DEFENDANT RENAISSANCE LEARNING, INC.'S MOTION TO TRANSFER
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Defendant Renaissance Learning, Inc. ("Renaissance Learning") hereby moves the Court, pursuant to 28 U.S.C. § 1404(a), for an Order transferring this action to the United States District Court for the Western District of Wisconsin.  Good cause supports a transfer to the Western District of Wisconsin where Renaissance Learning – the only remaining defendant – is headquartered (Wisconsin Rapids, Wisconsin).  **No** parties, witnesses, documents, or evidence are located in the Eastern District of Texas.  In contrast, the parties and their relevant witnesses, documents, and evidence are primarily located in Wisconsin and Virginia.  **All** of Renaissance Learning's relevant witnesses, documents, and evidence are located in Wisconsin.  In addition, Renaissance Learning's former President resides within the Western District of Wisconsin and is subject to that jurisdiction's subpoena power.   Plaintiff Better Education, Inc.'s ("Better Education") relevant witnesses, documents, and evidence appear to be located in or near Virginia, as: Better Education is headquartered in Yorktown, Virginia; Comtek, the original assignee of the patent-in-suit, was headquartered in Grafton, Virginia; named inventors are apparently located in Virginia and Delaware; and a Better Education founder is apparently located in Maryland.  Transfer to the Western District of Wisconsin is plainly more convenient for the parties and witnesses, will decrease the parties' and witnesses' financial and personal costs, and will ease access to sources of proof.

### STATEMENT OF FACTS

**I.      This Lawsuit and Expired U.S. Patent No. 5,002,491.**

Better Education filed a Complaint against Renaissance Learning, Turning Technologies, LLC, Wireless eSystems, Inc. and Learnstar, Inc. on October 6, 2010 alleging, *inter alia*, infringement of U.S. Patent No. 5,002,491 ("the '491 Patent") entitled an "Electronic Classroom System Enabling Interactive Self-Paced Learning." (Doc. No. 1, ¶7).  Better Education's claim

against Renaissance Learning is based on the (incorrect) contention that Renaissance Learning's "interactive electronic classroom systems, including but not limited to its Renaissance Learning 2Know responder" infringe "at least claim 1 of the '491 patent." (*Id.*, ¶¶ 9-12).

Any rights under the '491 Patent expired long ago, on April 28, 2009.

Better Education served Renaissance Learning with the Complaint on January 12, 2011. (Doc. No. 8).  On March 4, 2011, contemporaneous with this Motion, Renaissance Learning filed its Answer, Additional Defenses and Counterclaim.  As of this filing, all other defendants have been dismissed – leaving Renaissance Learning as the sole remaining defendant.  (Doc. Nos. 10, 12, 16).

## II.     Wisconsin-Based Renaissance Learning and the Accused 2Know! Product.

Renaissance Learning, headquartered in Wisconsin Rapids, Wisconsin, is a leading provider of technology-based school improvement and student assessment tools for K-12 schools.  (Declaration of Allen Thurber ("Thurber Decl."), ¶3).  Renaissance Learning's products have been adopted by more than 72,000 schools, and provide daily formative assessment and periodic progress-monitoring technology to enhance core curriculum, support differentiated instruction, and personalize practice in reading, writing and math.  (*Id.*)

Substantially all of Renaissance Learning's operations are located in the Western District of Wisconsin.  Renaissance Learning's corporate headquarters, telesales, customer support, marketing, application hosting, engineering, warehousing, and shipping operations are all located in Wisconsin Rapids.  (*Id.*, ¶4).  Indeed, approximately 75% of Renaissance Learning's United States employees are located in Wisconsin.  (*Id.*, ¶4).  The remaining 25% of Renaissance

Learning's U.S. employees make up a small field sales force spread across the U.S.[1] and localized software development teams in (i) Vancouver, Washington, (ii) Hood River, Oregon, and (iii) Toronto, Canada.  The company also has a small group in the United Kingdom.  (*Id.*, ¶5).

All of Renaissance Learning's U.S. orders, approximately 95% of the company's total, are processed in Wisconsin.  (*Id.*, ¶6).  The remaining 5% of the company's orders are for the United Kingdom and, accordingly, are processed there.  (*Id.*, ¶6).  No orders are processed in Texas.  (*See id.*, ¶6).

The accused 2Know! product was conceived, developed, researched, prototyped, designed, developed, tested, marketed, promoted, and sold out of Renaissance Learning's headquarters in Wisconsin Rapids.  (*Id.*, ¶7).  All of Renaissance Learning's witnesses with knowledge of these many issues work in Wisconsin Rapids, Wisconsin and reside within the Western District of Wisconsin.  (*Id.*, ¶8).  These witnesses include (*Id.*, ¶8):

| Witness | Title | General Knowledge |
|---|---|---|
| Peter Jungwirth | Vice President of Engineering | The engineering, design, development, and testing of wireless audience response systems, including the accused 2Know! product. |
| Mark Swanson | Chief Technology Officer | |
| John Byom | Vice President of Product Development | |
| Mark Petersen | Senior Vice President Business Development | Various aspects of the sales and marketing of wireless audience response systems, including the accused 2Know! product; the wireless audience response system market. |
| Jack McLaughlin | Vice President and General Manager | |
| Jeff Walker | Vice President of Marketing | |

---

[1]     Although Renaissance Learning now has a small sales office in Dallas, Texas, the accused 2Know! product was never sold out of that office prior to the '491 Patent's expiration.  (*Id.*, ¶5).  Today, that office holds only 4% of Renaissance Learning's U.S. employees. (*Id.*, ¶5).

| Witness | Title | General Knowledge |
|---------|-------|-------------------|
| Allen Thurber | Corporate Controller | Various aspects of the sales and marketing of wireless audience response systems, including the accused 2Know! product; Renaissance Learning's accounting practices and records. |

Moreover, **all** of the documents relating to the accused 2Know! product are located in Wisconsin. (*Id*., ¶11). These documents exist in local hard copy files and computers maintained by the witnesses identified above. (*Id*., ¶11). Wisconsin is also home to servers storing additional relevant documents, undoubtedly of a substantial volume whether measured by pages, documents, or gigabytes, as well as the technical personnel necessary to retrieve and compile those documents. (*See id*., ¶11). In addition, physical samples of the accused 2Know! product and prototype products are located in Wisconsin. (*Id*., ¶11).

**No** relevant Renaissance Learning witnesses, documents, physical product samples, electronically-stored information, evidence, or other information can be found in the Eastern District of Texas. (*Id*., ¶12).

In order to participate in hearings and trial in Marshall, Texas, for each trip, Renaissance Learning's witnesses will incur costs of approximately $800 for airfare and $200 per diem for lodging, meals, and rental car. (*Id*., ¶13). In addition to these out-of-pocket travel expenses, Renaissance Learning will lose its investment in its employee witnesses by virtue of their salaries, equaling approximately $800 per person per day. (*Id*., ¶15). Renaissance Learning and its witnesses will not only suffer a productivity loss while attending hearings and trial, but each trip will consume two additional days of lost productivity – as each trip to/from Wisconsin Rapids, Wisconsin and Marshall, Texas consumes approximately one business day. (*Id*., ¶14). The absence of key management employees for necessary participation in this case could be detrimental to Renaissance Learning's ongoing business operations. (*Id*., ¶15). If the action is

transferred to Wisconsin, on the other hand, the witnesses could take day trips for hearings and trial, and maintain productivity by returning to the office after testifying.  (*Id*., ¶14).

In addition to these substantial costs, absent transfer, two of Renaissance Learning's witnesses will incur significant additional and highly personal costs.   Allen Thurber, the Corporate Controller, has a teenage son who is severely and permanently disabled from a neurological birth defect.  (*Id*., ¶16).  Mr. Thurber's son requires round-the-clock adult care. (*Id*., ¶17).  On weekday evenings and on weekends, Mr. Thurber and his wife share caregiver duties and provide the necessary adult care for his son.  (*Id*., ¶¶18-19).   In addition, Mr. Thurber's mother is in an assisted living facility and his father needs significant assistance to remain living in his own home.  (*Id*., ¶¶21).  Any time that is required for Mr. Thurber to travel away from home exacts a tremendous burden on Mr. Thurber, his wife, his son, his mother, and his father.  (*Id*., ¶¶20-22).

Mark Petersen, Senior Vice President of Business Development, has an autistic teenage daughter.  (Declaration of Mark Petersen ("Petersen Decl."), ¶3).  Mr. Petersen's daughter requires round-the-clock adult care.  (*Id*., ¶3).  Like Mr. Thurber, Mr. Petersen shares caregiver duties on weekday evenings and weekend with his wife.  (*Id*., ¶4).  Any travel away from home is exceptionally burdensome on Mr. Peterson and his family.  (*Id*., ¶¶5-6).

### III.    **Virginia-Based Plaintiff Better Education.**

There are **no** Better Education witnesses, documents, or evidence that appear to be located in this judicial district.

According to its website, Better Education is an educational research organization headquartered in Yorktown, Virginia.  (Declaration of Nick Williamson ("Williamson Decl."), ¶2 and Exh. A; *see also id.* at Exh. B).  Better Education claims to have originally sold a product,

"Classtalk," allegedly covered by the '491 Patent – but appears to no longer be manufacturing or selling interactive teaching systems. (*See id.*, ¶2 and Ex. A). Better Education witnesses likely include its founders: named inventor Louis Abrahamson, who apparently resides in Virginia; named inventor Frederick Hartline, who apparently resides in Delaware; Lev Tannen, who apparently resides in Maryland; named inventor Milton Fabert, who apparently resides in California; and named inventor Robert Knapp. (*Id.*, ¶¶5-6, 8, 10, 12, 14 and Exhs. A-B, E, H, K, N). Better Education's witnesses would also include individuals – likely located in Virginia – with knowledge of the '491 Patent (including the granted and pending *ex parte* reexamination of the '491 Patent), product development, marketing, business development, licensing, and other issues. (*See id.*, ¶3 and Ex. B). Further, the travel distance for most (if not all) of Better Education's witnesses is shorter to the Western District of Wisconsin courthouse in Madison, Wisconsin than to the Eastern District of Texas courthouse in Marshall, Texas. (*Id.*, ¶¶5-13 and Exhs. E-P).

**IV.     Third Party Witnesses in Wisconsin and Virginia.**

There are **no** third parties that appear to be located in this judicial district.

Third party witnesses likely include persons who no longer work for Renaissance Learning, but are within the subpoena power of the Western District of Wisconsin. One example is Renaissance Learning's former President John Hickey, who resides in Wisconsin Rapids, Wisconsin, within the Western District of Wisconsin. (Thurber Decl., ¶9). Additional third party witnesses may include individuals with knowledge of the original assignee of the patent, Comtek, which was located in Virginia. (Williamson Decl., ¶3 and Ex. B).

## **LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The Supreme Court interprets § 1404(a) to provide district courts with discretion to conduct an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *see also Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (noting that the district court has "broad discretion in deciding whether to order a transfer").

The threshold inquiry in a transfer motion is whether the claims could have originally been brought in the transferee district.  *See In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) (whether personal jurisdiction and venue are proper in the transferee forum).  The movant then must show "good cause" for the transfer upon a balancing of private convenience and public interest factors. *See id.* at 315; *Deep Nines, Inc. v. McAfee, Inc.*, 2009 U.S. Dist. LEXIS 104817, at *6 (E.D. Tex. Nov. 10, 2009).

The private convenience factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process to secure attendance of witnesses; (3) cost and convenience to parties and witnesses; and (4) all other practical problems that make trial easy, expeditious and inexpensive. *See In re Volkswagen*, 545 F.3d at 314.  The public interest factors are: (1) administrative difficulties flowing from court congestion; (2) local interest in having local interests decided at home; (3) familiarity of the forum with governing law; and (4) avoidance of unnecessary problems of conflicts of law or application of foreign laws.  *See id.* Although the "convenience of the witnesses is probably the single most important factor," no single private or public factor is dispositive in isolation; rather, the court must consider whether

each factor weighs for or against transfer (or whether it is neutral), and then decide whether, on

balance, the transferee venue is "clearly more convenient." *See id.* at 315; *see In re Genentech,*

*Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

## ARGUMENT

**I.      This Action Could Have Been Brought in the Western District of Wisconsin.**

There is no question that Better Education could have originally brought this action in the

Western District of Wisconsin. *See In re Volkswagen*, 545 F.3d at 312-13.  The Western District

of Wisconsin would have subject matter jurisdiction pursuant to 35 U.S.C. §§ 271 and 281, and

28 U.S.C. § 1338(a).  Venue is proper in the transferee forum pursuant to 28 U.S.C. §§ 1391(b)

and (c), and 28 U.S.C. § 1400(b).  Thus, this Court must weigh the private and public interest

factors described above, which, in this case, unquestionably illustrate that the Western District of

Wisconsin is a more convenient venue. *See In re Volkswagen*, 545 F.3d at 315.

**II.     Balancing the Private and Public Interest Factors Reveals that the Western District of Wisconsin Is Clearly a More Convenient Venue.**

**A.      Private Interest Factors**

**1.      The Convenience of the Parties and Witnesses and the Cost of Attendance for the Witnesses Weighs in Favor of Transfer.**

The Western District of Wisconsin is plainly more convenient and less costly – at both a

business and personal level – for Renaissance Learning and its witnesses.  In addition, it appears

that the Western District of Wisconsin is also a more convenient forum for Better Education and

its witnesses.  In contrast, and as the relevant witnesses, documents, and evidence are not located

in and have no connection to the Eastern District of Texas, the present forum is burdensomely

inconvenient and comes with heavy costs.

The Western District of Wisconsin is more convenient for the relevant witnesses.  "The

convenience of the witnesses is probably the single most important factor in transfer analysis."

*See In re Genentech*, 566 F.3d at 1343. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen*, 545 F.3d at 317. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.*

Here, all of Renaissance Learning's witnesses with knowledge of the accused 2Know! product are within the Western District of Wisconsin, where Renaissance Learning is headquartered and has the vast majority of its operations. (Thurber Decl., ¶¶4, 7-8). Renaissance Learning is approximately 1077 miles from the Eastern District of Texas courthouse in Marshall, Texas – but is only about 100 miles from the Western District of Wisconsin courthouse in Madison, Wisconsin. (Williamson Decl., ¶4 and Exhs. C-D). In order to travel to Texas, each witness will incur costs of approximately $800 for airfare and $200 per diem for lodging, meals, and rental car. (Thurber Decl., ¶13). The substantial distance separating Wisconsin Rapids, Wisconsin and Marshall, Texas will also result in at least two additional days of lost productivity per trip, due to travel days. (*Id.*, ¶14). The absence of key management employees for their necessary participation in this case will be detrimental to Renaissance Learning's ongoing business operations, as the opportunity costs of the lost time are much greater than costs measured by salaries alone. (*Id.*, ¶15). All of these costs would be avoided, or significantly minimized, by transferring the case to the Western District of Wisconsin. *See In re Acer America, Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). If the action is transferred,

participation in hearings or trial could be accomplished via day trips, and witnesses could return to the office afterward as needed.  (Thurber Decl., ¶14).

All of Renaissance Learning's witnesses will suffer the "personal costs associated with being away from work, family, and community" if the action is not transferred.  *See In re Acer*, 626 F.3d at 1255 (*quoting In re Volkswagen*, 545 F.3d at 317).  In addition to those general personal costs, two important Renaissance Learning witnesses will suffer significant individual personal costs.  Both Mr. Thurber and Mr. Petersen have disabled children that require round-the-clock care, and each is a required caregiver on weekday evenings and weekends.  (Thurber Decl., ¶¶16-22; Petersen Decl., ¶¶3-6).  Transfer of this case to the Western District of Wisconsin would permit each to testify without significantly interfering with their substantial personal responsibilities or unduly burdening their respective families.

The transfer of this action will also be more convenient for Better Education's likely witnesses.  Better Education's witnesses on topics such as the '491 Patent (including the granted and pending *ex parte* reexamination of the '491 Patent), product development, marketing, business development, licensing, and other issues are likely located at the company's headquarters in Yorktown, Virginia; approximately 1,006 miles from the Western District of Wisconsin courthouse in Madison, Wisconsin and approximately 1,236 miles from the Eastern District of Texas courthouse in Marshall, Texas. (Williamson Decl., ¶6).  The 200+ mile distance savings alone reflects the increased convenience provided by the Western District of Wisconsin to Better Education and its witnesses.  *In re Volkswagen*, 545 F.3d at 317 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").  No likely Better Education witnesses (or third party

witnesses) appear to be located in this judicial district, and the travel distance for most, if not all, of those witness is shorter to the Western District of Wisconsin courthouse in Madison, Wisconsin than to the Eastern District of Texas courthouse in Marshall, Texas.  (Williamson Decl., ¶¶5-13 and Exhs. E-P).

The Western District of Wisconsin is a vastly more convenient forum for both parties and all witnesses.

> **2.    The Relative Ease of Access to Sources of Proof Factor Weighs in Favor of Transfer, Since all of Renaissance Learning's Relevant Evidence is Located in the Transferee Forum and No Known Relevant Evidence Can Be Found in this Judicial District.**

A substantial portion of the relevant evidence in this matter, including all relevant evidence concerning Renaissance Learning and the accused 2Know! product, is located within the Western District of Wisconsin.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345 (internal quotations and citation omitted); *In re Acer*, 626 F.3d at 1256 (holding that the sources of proof factor weighed in favor of transfer where a significant portion of the evidence was located in the Northern District of California, multiple defendants' products were researched and designed in California, and all decisions regarding marketing, sales, and pricing of such products took place in California).

Here, all of Renaissance Learning's relevant operations (including its corporate headquarters, telesales, customer support, marketing, application hosting, engineering, warehousing, and shipping operations) are located in the Western District of Wisconsin.  (Thurber Decl., ¶4).  Likewise, all documents related to 2Know! product pricing, sales, costs, marketing, promotion, research, design, development and testing are in Wisconsin – where the

2Know! product was researched and designed. (*Id.*, ¶¶7, 11). Physical samples and prototypes of the accused 2Know! product are also in Wisconsin. (*Id.*, ¶11). None of this evidence is located in Texas. (*Id.*, ¶¶7, 11, 12). Further, Better Education is located in Virginia, which is likely where the majority of its documents and evidence will be located. (*See* Doc. No. 1, ¶1). With Renaissance Learning being the only remaining defendant, there is likely no source of proof located in the Eastern District of Texas. *See In re Acer*, 626 F.3d at 1256.

The access to sources of proof factor unmistakably weighs in favor of transfer.

> **3.    The Availability of Compulsory Process to Secure Attendance of Witnesses, Including Renaissance Learning's Former President, Weighs in Favor of Transfer.**

The subpoena power of the Western District of Wisconsin is an important factor in this action. Under Federal Rule of Civil Procedure 45(b)(2)(A), a Court may issue a subpoena to a nonparty witness "within the district of the issuing court." The fact that the transferee venue has usable subpoena power weighs in favor of transfer. *See In re Volkswagen*, 545 F.3d at 316; *see also In re Genentech*, 566 F.3d at 1345.

Conversely, the subpoena powers of the Eastern District of Texas are of no apparent use. All of Renaissance Learning's witnesses reside in Wisconsin. (Thurber Decl., ¶8). John Hickey, former President of Renaissance Learning, resides in Wisconsin Rapids, Wisconsin and may be compelled by the transferee forum's subpoena power to attend hearings and trial. (*Id.*, ¶9). There may be additional third party witnesses who no longer work for Renaissance Learning, but are within the subpoena power of the transferee forum. (*Id.*, ¶10). Similarly, as discussed above, no Better Education or third party witnesses appear to be located within the Eastern District of Texas (or within 100 miles of the Eastern District of Texas courthouse in Marshall, Texas). Consequently, transfer to the Western District of Wisconsin is likely to bring more witnesses

within the court's "usable subpoena power" under Rule 45.  *See In re Volkswagen*, 545 F.3d at

316; *In re Acer*, 626 F.3d at 1255.

> **4.     There Are No Other Practical Problems That Make Trial in the Eastern District of Texas Easy, Expeditious, and Inexpensive.**

There are no issues in this action that would make it more efficient to keep the action in

the Eastern District of Texas.   Renaissance Learning brings the instant motion within the

reasonably prompt timeframe required by the Fifth Circuit, no scheduling conference has been

held, no disclosures have been made, and no discovery has been served.  *See Peteet v. Dow

Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).   Indeed, Renaissance Learning has filed this

Motion at the same time as its Answer, Additional Defenses and Counterclaim.   Thus, transfer of

this action will not delay the action.

Further, although Magistrate Judge Everingham previously construed the claims of the

'491 Patent in another matter, the Western District of Wisconsin is just as capable of interpreting

and applying patent law as the Eastern District of Texas.  *See In re TS Tech*, 551 F.3d 1315, 1320

(Fed. Cir. 2008); *Promote Innovation LLC v. Schering Corp.*, 2011 WL 665817, *5 (E.D. Tex.

Feb. 14, 2011).   Indeed, the judges in the Western District of Wisconsin are known (as those in

this Court are) for their experience and expertise with patent law.   (Williamson Decl., ¶15 and

Exh. Q, pp.6-7, 14).   Thus, judicial economy does not support keeping this action in the Eastern

District of Texas.

> **B.     Public Interest Factors**

> **1.     The Administrative Difficulties Flowing From Court Congestion in the Eastern District of Texas Support Transfer.**

"To the extent that court congestion is relevant, the speed with which a case can come to

trial and be resolved may be a factor." *In re Genentech*, 566 F.3d at 1347; *see also Gates Learjet

Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer]

will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").

Here, the speed at which this action can come to trial and be resolved is significantly faster in the Western District of Wisconsin than the Eastern District of Texas.  The average time to trial is currently approximately 21-25 months in the Eastern District of Texas, compared to only approximately 8-15 months in the Western District of Wisconsin.  (Williamson Decl., ¶¶15-17 and Exh. Q at pp.17-19, Exhs. R-S).  The parties will be more likely to reach trial and other dispositive proceedings, as appropriate, quickly in the Western District of Wisconsin. Accordingly, this factor weighs in favor of transfer.

## 2. The Local Interest in Having Local Interests Decided at Home Weighs in Favor of Transfer.

A forum's interest in having "local interests" decided at home is based on the "relevant factual connection" – the location of incidents, parties, witnesses, and evidence – to the present venue. *See In re Volkswagen*, 545 F.3d at 317–18.  "While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."  *In re Acer*, 626 F.3d at 1256.  Here, there are indeed significant connections among the Western District of Wisconsin and Renaissance Learning's accused 2Know! product as **all** relevant witnesses, documents, and evidence are located within that district.  (Thurber Decl., ¶¶4-12).  None are located in Texas and there is no relevant factual connection to the Eastern District of Texas.  (*Id.*, ¶¶4-12); *see also In re Volkswagen*, 545 F.3d at 307, 317–18.  Thus, the local interest factor weighs in favor of transfer.

      **3.**      **The Familiarity of the Forum with Governing Law and the Avoidance of Unnecessary Problems of Conflicts of Law or Application of Foreign Laws Are Neutral Factors.**

As with the judicial economy discussion above, these factors are at most neutral. The Western District of Wisconsin is just as capable of interpreting and applying patent law as the Eastern District of Texas. *See In re TS Tech*, 551 F.3d 1315, 1320 (Fed. Cir. 2008); *Promote Innovation LLC v. Schering Corp.*, 2011 WL 665817, *5 (E.D. Tex. Feb. 14, 2011). Indeed, both forums have well-earned reputations for their expertise in resolving patent infringement cases. Lastly, there are no issues related to conflicts of law or the application of foreign law.

<u>**CONCLUSION**</u>

The convenience of the parties and witnesses, the professional and personal costs to the witnesses, the primary location of the sources of proof, the availability of compulsory process, the lack of administrative difficulties, and the local interest factors all favor transfer of this action to the Western District of Wisconsin. No factor favors keeping this action in the Eastern District of Texas. Thus, as good cause exists for transfer, Renaissance Learning respectfully requests that the Court grant this motion and transfer this case to the Western District of Wisconsin.

Dated:  March 4, 2011           Respectfully submitted,

                    By:    */s/ E. Glenn Thames, Jr.*
                              Nick E. Williamson
                              nick.williamson@bryancave.com
                              BRYAN CAVE LLP
                              211 N. Broadway, Suite 3600
                              St. Louis, MO  63102
                              (314) 259-2000
                              (314) 259-2020 (fax)

E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON, P.C.
110 North College Avenue, Suite 500
Tyler, Texas  75702
(903) 597-8311
(903) 593-0846 (fax)

*Attorneys for Defendant Renaissance Learning, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on March 4, 2011.   All other counsel will be served by U.S. first-class mail.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h). Plaintiff, Better Education, Inc., opposes this motion.  No other parties remain in this action.  The personal conference required by this rule was conducted on March 4, 2011 by telephone conference.  Glenn Thames and Melissa Smith participated in the conference.  The parties could not reach an agreement because the parties could not agree to the relief requested.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.